O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEMENTINA OROZCO,<br><br>    Plaintiff,<br>  v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. EDCV 10-1995-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record ("AR"), and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 5 at 3.)

# I.
# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered Plaintiff's Residual Functional Capacity ("RFC") and ability to perform her past relevant work;

(2) Whether the ALJ properly considered Plaintiff's testimony;

(3) Whether the ALJ properly considered lay witness testimony; and

(4) Whether the ALJ properly relied on vocational expert ("VE") testimony.

(JS at 3-30.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.  The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairments of cervical strain, DeQuervain's syndrome – right wrist, right shoulder impingement, diabetes, obesity, and hypertension.  (AR at 19.)

The ALJ further found that Plaintiff had the RFC to perform less than light work with the following limitations:  push, pull, lift, and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to six hours in an eight-hour day; sit for up to six hours in an eight-hour day; no forceful gripping and/or grasping with the right hand; occasional postural activities; no climbing ladders, ropes, or scaffolds; no exposure to extreme temperatures or vibrations; no working with hazardous machinery; and no working at heights.  (Id. at 20.)

Relying on the testimony of the VE to determine the extent to which Plaintiff's limitations eroded the less than light occupational base, the ALJ asked the VE whether, in light of Plaintiff's age, education, work experience, and RFC, she would be able to perform her past relevant work.  (Id. at 24, 44-46.)  Based on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of her past relevant work as a cannery worker.  (Id. at 24.)

**B.  The ALJ Properly Determined That Plaintiff Can Perform Her Past Relevant Work as Performed in the National Economy.**

Plaintiff challenges the ALJ's conclusion that she retains the RFC to perform her past relevant work as a cannery worker.[3]  (JS at 3-11, 15-16.)

If a plaintiff has a severe impairment that does not meet or equal the Listings, the Commissioner or ALJ will review the plaintiff's RFC.  20 C.F.R. § 404.1520(e).  The Court will affirm the ALJ's determination of the plaintiff's RFC

---

[3] To the extent Plaintiff includes in this claim argument regarding the ALJ's assessment of Plaintiff's credibility, the claim is addressed in detail below.

3

if the ALJ applied the proper legal standard, and his decision is supported by substantial evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). In making his RFC determination, the ALJ may properly take into account those limitations for which there is record support and that did not depend on the plaintiff's testimony where the ALJ properly found plaintiff's testimony not credible. Id.

Here, in light of the ALJ's RFC assessment, as detailed above, and with the support of testimony from the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a cannery worker, not as that job was previously performed by Plaintiff but as it is generally performed in the national economy. (AR at 24, 45-46.)

The ALJ based his RFC assessment on the evidence of Plaintiff's functional capacity remaining after the exclusion of Plaintiff's subjective complaints. As discussed below, the ALJ properly rejected Plaintiff's credibility and thus appropriately excluded Plaintiff's subjective complaints from his RFC assessment.

Contrary to Plaintiff's subjective complaints, the record reveals that other than well-healed right shoulder surgery, Plaintiff suffered from minimal impairments and, for the most part, required only conservative treatment. The medical evidence indicates that Plaintiff suffered from slight right carpal tunnel syndrome, DeQuervain's syndrome, mild impairments of her right wrist and cervical spine, obesity, diabetes and occasional reports of elevated blood pressure, but that she did not receive any specific or ongoing medical treatment for any of these impairments. (Id. at 214, 275-76, 279, 307, 309, 315, 325, 371.)

Based on this medical history, Agency review physician Franklin Kalmar, M.D., completed a Residual Functional Capacity Assessment of Plaintiff. Dr. Kalmar concluded that Plaintiff could push, pull, lift, and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for up to six hours in an eight-hour day; sit for up to six hours in an eight-hour day; perform no forceful

1 gripping and/or grasping with the right hand; perform occasional postural
2 activities; perform no climbing ladders, ropes, or scaffolds; receive no exposure to
3 extreme temperatures or vibrations; perform no work with hazardous machinery;
4 and perform no work at heights. (Id. at 329-31.)
5      After considering the medical record, the ALJ credited the evidence of
6 Plaintiff's right shoulder injury, mild carpal tunnel syndrome, De Quervain's
7 Syndrome, right arm and elbow pain, cervical spine impairments, controlled
8 hypertension, diabetes, and obesity. (Id. at 22, 23.) On the other hand, the ALJ
9 properly rejected Plaintiff's complaints of depression; side effects of medication;
10 left side numbness; pain of the left shoulder, waist/hip, low back, feet, knees;
11 memory loss; and difficulties standing, sitting, or walking; for which there was
12 absolutely no supporting medical evidence of record. (Id. at 19, 21, 23); see
13 Bayliss, 427 F.3d at 1217. The ALJ then adopted the opinion of Dr. Kalmar as to
14 Plaintiff's RFC. Dr. Kalmar's conclusion was consistent with the other evidence
15 of record and accounted for all of Plaintiff's impairment that were supported by the
16 medical evidence. (AR at 23.) Thus, Dr. Kalmar's assessment constitutes
17 substantial evidence supporting the ALJ's RFC assessment because it is consistent
18 with all the relevant evidence of record. See Saelee v. Chater, 94 F.3d 520, 522
19 (9th Cir. 1996).
20      The ALJ then posed a hypothetical question to the VE including each of the
21 limitations accounted for in the RFC assessment. The VE testified that an
22 individual with Plaintiff's RFC would be capable of performing Plaintiff's past
23 relevant work as a cannery worker. As discussed below, the ALJ properly relied
24 on this expert testimony. (See Discussion supra, Part III.C.)
25      Accordingly, the ALJ properly assessed Plaintiff's RFC and, relying on VE
26 testimony, properly concluded that an individual with such an RFC is capable of
27 performing Plaintiff's past relevant work. The ALJ was not obligated to consider
28 any alleged limitations that were rejected as not supported by the record in

determining whether Plaintiff could perform her past relevant work. Thus, relief is not warranted on this claim.

**C.  The ALJ Properly Assessed Plaintiff's Credibility.**

Plaintiff faults the ALJ for failing to provide sufficient reasons for rejecting her subjective complaints of impairment. (JS at 16-20, 23-25.) The Court disagrees.

In his opinion denying benefits, the ALJ rejected Plaintiff's subjective complaints as follows:

> The allegations of the claimant . . . concerning the extent of the claimant's impairments and severity of her limitations are completely out of proportion with the findings contained in the objective medical evidence. . . .
>
> In addition, there are numerous complaints that are not even mentioned in the medical evidence of record. For example, the claimant alleges suffering side effects from her medications (e.g. memory loss, numbness of the left side of her body, and pain in her low back, feet and knees). Also, as indicated above, the claimant alleges depression . . . . None of these symptoms are mentioned in the medical evidence of record. It is reasonable to expect some documentation of such severely limiting symptoms in the medical record; if, indeed, those symptoms exist. This lack of documentation in the medical record indicates the claimant is embellishing her complaints.
>
> Along the same line, there is a large gap in the medical record during which the claimant had no musculoskeletal complaints at all. As will be discussed further below, the claimant had physical therapy subsequent to right shoulder surgery in 2003. The last record regarding physical therapy for the right shoulder is dated June 2, 2003. Subsequently, the claimant was followed by Dr. Herman Mathias for a

period of several years. Up until November 13, 2006, there is no mention in the treating records of any musculoskeletal complaints. This indicates that from, at least, June 2, 2003 through November 13, 2006, the claimant's symptoms related to possible musculoskeletal impairments were not significant enough for her to complain about. Again, this is evidence the claimant's allegations are not credible.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments might be expected to cause the alleged symptoms; however, the statements of the claimant . . . concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

. . . The claimant underwent arthroscopic subacromial decompression of the right shoulder on January 7, 2003; during which full range of motion was obtained and no evidence of instability was noted. After the surgery, the claimant underwent 13 sessions of physical therapy with good results. According to this report, after the physical therapy, the claimant was again able to do household cleaning and work in the garden and the yard. Subsequently, the physical therapist noted that, despite the claimant's persistent pain complaints, she had a functional active range of motion in the right shoulder. This evidence completely refutes the claimant's allegations concerning ongoing shoulder problems and lack of recovery. The medical records' silence as to right shoulder complaints after June 2, 2003 indicates the claimant indeed recovered significantly from her right should injury. In fact, x-rays of the right shoulder dated November 15, 2006 were negative.

. . . [Plaintiff] was diagnosed with right wrist DeQuervain's Syndrome. Yet, the medical evidence of record contains no indication

that the condition required ongoing treatment. Again, as noted, previously, there is a gap in the record during which there are no complaints related to the upper extremity. In November, 2006, the record does show the claimant complaining of pain in her right elbow; but x-rays were negative. There is also documentation of right arm and elbow complaints on February 21, 2007 and June 6, 2007. Still, there is no evidence the claimant required treatment for these complaints. In light of the mild objective findings and lack of ongoing treatment, the functional capacity assessment herein generously allows for the claimant's right upper extremity and wrist complaints.

There is also objective evidence to support impairment involving the cervical spine. . . . Contrary to the claimant's allegations, however, there is no indication that surgery was ever considered. The record contains no evidence of ongoing treatment of a significant duration for the claimant's cervical spine. Again, the claimant's allegations are not corroborated by the medical evidence.

. . . .

. . . The medical evidence of record fails to corroborate the claimant's allegations of depression as a result of her diabetes. As discussed previously, there is no mention at all in the medical evidence of record of depression or any other mental impairment.

The medical record also fails to corroborate the claimant's allegations of: low back pain; waist/hip problems; left shoulder problems; pain or numbness of the body or the lower extremities; side effects from medication; memory loss; or of difficulties standing, sitting and walking. In fact, the medical evidence of record is utterly silent with regard to any of these alleged complaints. Without corroborating objective medical evidence, the claimant's subjective complaints are not

   sufficient to support a finding of severe impairment or limitations related
   to these alleged disabilities.

(AR at 21-23 (citations omitted).)

  An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

  Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

  To determine whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Here, the ALJ provided several clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible. First and foremost, the ALJ cited a total lack of any medical evidence to support many of Plaintiff's allegations of impairment. (AR at 21, 23.) Plaintiff's complaints of depression, side effects from medication, low back pain, waist/hip problems, left shoulder pain, pain of the lower extremities, memory loss, and difficulty standing, sitting, and walking are not only unsupported by objective medical evidence, but there is absolutely no evidence in the record to show that Plaintiff complained to a single medical source about these impairments. Unexplained failure to seek treatment is a valid reason for rejecting a Plaintiff's credibility. Orn v. Astrue, 495 F.3d 625, 636, 638 (9th Cir. 2007).

The ALJ also credited evidence regarding Plaintiff's complaints of right shoulder injury, DeQuervain's Syndrome, right arm and elbow pain, and cervical spine pain, but found that Plaintiff's complaints of impairment with respect to these physical ailments are not fully credible in light of significant gaps in complaints and treatment for any musculoskeletal problems. (AR at 21-22.) The ALJ further found that to the extent that Plaintiff was treated for her musculoskeletal complaints, other than her right shoulder injury, the treatment was conservative. (Id. at 22.) The ALJ is correct in noting that between June 6, 2003, and November 13, 2006, there is no evidence Plaintiff complained of, or sought treatment from any medical source for musculoskeletal problems. (Id. at 273, 309.) In fact, when Plaintiff to her physician on November 13, 2006, of right elbow pain, she stated that she had only been experiencing pain for two weeks. (Id. at 273.) Moreover, the evidence does not indicate Plaintiff required any significant treatment for her complaints of DeQuervain's Syndrome, right arm and elbow pain, cervical spine pain, or diabetes. The unexplained gap in medical

10

treatment, and evidence that only conservative treatment was necessary when treatment was sought, are valid reasons for rejecting Plaintiff's credibility.[4] Orn, 495 F.3d at 636, 638 (unexplained failure to seek medical treatment may be relied upon in finding Plaintiff's complaints unjustified or exaggerated); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (ALJ may discount Plaintiff's credibility based on conservative treatment).

In addition, the ALJ cited evidence of Plaintiff's ability to engage in activities of daily living. (AR at 22.) As reported in a physical therapy note, following right shoulder surgery Plaintiff recovered enough to return to household cleaning and yard work. (Id. at 265.) Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (adverse credibility finding based on daily activities may be proper "if a claimant engaged in numerous daily activities involving skills that could be transferred to the workplace"). Although the physical therapy note is silent as to the extent of household cleaning and yard work Plaintiff was able to do on a daily basis, the fact that Plaintiff was capable of such physical activities at all is substantial evidence that Plaintiff is not as impaired as she alleged. This, in combination with the additional reasons discussed herein, was a valid consideration for the ALJ in making his credibility determination.

Finally, the ALJ concluded that "[w]ithout corroborating objective medical

---

[4] The Court notes that Plaintiff never alleged that the gaps in medical treatment were due to an inability to afford treatment. See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment.").

11

1 evidence," Plaintiff's subjective complaints of impairment could not be credited.
2 (AR at 23.) As stated above, the record is silent as to many of Plaintiff's subjective
3 complaints. Although a lack of objective medical evidence may not be the sole
4 reason for discounting a plaintiff's credibility, it is nonetheless a legitimate and
5 relevant factor to be considered. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.
6 2001).

7       Based on the foregoing, the Court finds that the ALJ stated specific and
8 legitimate reasons, supported by substantial evidence in the record, for rejecting
9 Plaintiff's credibility. Thus, relief is not warranted on this claim.

10 **D.**     **The ALJ Properly Considered the Lay Witness Testimony.**

11       Plaintiff claims that the ALJ failed to properly consider the testimony of
12 Plaintiff's husband, Sigifredo Orozco. (JS at 25-27, 28.) Again, the Court
13 disagrees.

14       Plaintiff's husband testified at the hearing before the ALJ. Mr. Orozco
15 testified that Plaintiff is not capable of any meaningful activity and that he must do
16 all the housecleaning and cooking. (AR at 50-51.) According to his testimony,
17 Plaintiff sleeps all day due to pain, has become very nervous and violent, and has
18 suicidal tendencies. (Id. at 51.)

19       Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that in addition to
20 medical evidence, the Commissioner "may also use evidence from other sources to
21 show the severity of [an individual's] impairment(s) and how it affects [her]
22 ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by
23 friends and family members in a position to observe a claimant's symptoms and
24 daily activities have routinely been treated as competent evidence." Sprague v.
25 Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn
26 hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th
27 Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.
28 See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).

If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Here, the ALJ acknowledged Mr. Orozco's testimony and rejected it, stating that "the . . . statements of the husband concerning the extent of the claimant's impairments and severity of her limitations are completely out of proportion with the findings contained in the objective medical evidence." (AR at 21.)

The Court does not consider the persuasiveness of the ALJ's reasons for rejecting the statements of Plaintiff's husband. Ultimately, the ALJ provided reasoning for rejecting the third party evidence that were germane to the individual. Thus, the ALJ fulfilled his duty to consider the evidence and provide sufficient reasons for rejecting it, and relief is not warranted on this claim.

**E.     The ALJ Properly Relied on the Testimony of the VE.**

Plaintiff argues that the ALJ erred in relying on the testimony of the VE in finding that Plaintiff was capable of performing her past work as a cannery worker. Plaintiff argues that the VE testified that, when accounting for Plaintiff's subjective complaints, Plaintiff would be unable to perform such work. (JS at 28-29, 30.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations.

1  Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v.
2  Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d
3  1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence
4  which is disputed, the assumptions in the hypothetical must be supported by the
5  record).
6     As the Court concluded above, the ALJ properly rejected Plaintiff's
7  subjective complaints of impairment and appropriately assessed Plaintiff's RFC
8  based on the evidence of record.  Accordingly, the ALJ was not obligated to
9  include Plaintiff's subjective complaints of limitations in his hypothetical to the
10 VE.  See, e.g., Magallanes, 881 F.2d at 756-57; Copeland, 861 F.2d at 540;
11 Martinez, 807 F.2d at 773-74.  Instead, the ALJ included in his hypothetical to the
12 VE all of the limitations accounted for in his RFC assessment.  Based on this
13 hypothetical, the VE testified that Plaintiff would be capable of performing her
14 past relevant work as a cannery worker, as that job is performed in the national
15 economy.  This was not error.  Thus, relief is not warranted on this claim.

## IV.
## ORDER

18    Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be
19 entered affirming the decision of the Commissioner, and dismissing this action
20 with prejudice.

22 Dated: January 4, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge